LINCOLN NATIONAL BANK, and others, in equity, *vs.* THE CITY OF PORTLAND and the PORTLAND & OGDENSBURG RAILWAY, and others.

Cumberland.    Opinion October 12, 1889.

*Railroad.  New Corporation.  Bond-holders.  Cancelled coupons.  Capital stock.*

*Reduction of shares.  Equity.  Injunction.  Special Laws,* 1885, *c.* 507; 1872, *c.* 165.

Upon the reorganization of a railroad corporation, by its mortgage bond-holders after foreclosure, equity will restrain the issue of shares to a bond-holder to whom there has been voted more shares than he is entitled to under any legal contract between him and the mortgagor, although there was no over-issue of bonds under the mortgage.

This principle of equity applied to the following case:

The Portland and Ogdensburg Railroad Company issued its bonds to the city of Portland, dated Nov. 1, 1871, of the par value of $1,350,000, to secure the payment of city scrip of equal par value that was delivered the Railroad Company at various times in instalments of $50,000, each.

The railroad bonds were delivered to the city with all the coupons on them, except coupons amounting to $630.  Coupons upon the city scrip, due before the scrip was delivered to the Railroad Company were cut off when the scrip was delivered.

The mortgage securing the railroad bonds has become foreclosed, and the city demanded from the new corporation 24,840 shares of the par value of $2,484,000.  This sum is the total amount of the railroad bonds delivered the city with interest from the date of their issue.

The act of the legislature, authorizing the city loan, provided that payment of coupons upon the city scrip by the railroad company should require the city treasurer to cancel and surrender an equal amount of coupons upon the railroad bonds.

The railroad company paid coupons on the city scrip as they fell due and delivered the same to the city treasurer in the aggregate, amounting to $127,260, and, in equity, this operated as payment, cancellation and extinguishment of an equal amount of interest coupons upon the railroad bonds held by the city to secure its scrip.

The interest paid by the railroad company upon the city scrip, amounting to $127,260, and coupons amounting to $630, that had been cut from railroad bonds before they were delivered to the city—in all $127,890,—were included in the amount for which the city demanded shares in the new railroad company and in the number of shares, viz: 24,840 voted by the railroad company to the city; and therefore, the amount of stock, viz: $2,484,000, so voted the city must be reduced by $127,890, and shares representing the balance, viz: $2,356,110, only should issue.

ON REPORT.

Bill in equity for an injunction against the defendants to restrain the issue of shares in a new railroad corporation; also for a decree that certain interest coupons of the original railroad have been cancelled and surrendered; and that the city of Portland be estopped from denying that such coupons have been so cancelled and surrendered.

The legal grounds on which the plaintiffs sought relief are indicated in the following portions of their bill.

That said city claims the whole of said shares shall be issued in accordance with said vote of said directors, and has requested the issue thereof; that the same has not yet been issued, but may at any time be issued by the officers of said Portland & Ogdensburg Railway.    *    *    *    .

That the issue of said stock in exchange for said interest falling due before the first day of November in the year of our Lord eighteen hundred seventy-five, would be without right and an injury to your orators, and to all other holders of said bonds and coupons, and to all other holders of shares of the capital stock of said Portland & Ogdensburg Railway except said city, and that the same ought not to be issued; and that your orators did in writing, on the eighth day of January in the year of our Lord eighteen hundred eighty-seven, notify said corporation, and the

president and treasurer thereof, and therein protest against the issue thereof, and request the rescinding of the vote of the directors aforesaid authorizing such issue, a duplicate of which said notice is hereunto attached, marked "Exhibit E," and made part hereof as though recited herein at length, but said directors have taken no action on said notice or in reference thereto; so that said vote of said directors remains unrescinded and in full force, and so that said directors have refused all relief to your orators in the premises.   *   *   *

That the question involved in reference to the issue of said shares to said city of Portland is purely one of law, depending wholly on the effect and construction of statutes of the State of Maine and of the mortgages, contracts and other papers hereinbefore set out; and it is moreover a question of strict legal right, and therefore in no sense of that class of matters of discretion, with reference to which directors of corporations have certain margins for decision and determination, according to their best estimate of the interests of the corporation which they represent; and moreover said directors, in passing said vote on the twenty-first day of December in the year of our Lord eighteen hundred eighty-six, were guided by the wishes of said city council, communicated to them as provided in said order of said city council approved on said seventh day of December; that said city of Portland, by the vote of its city council approved the third day of January in the year of our Lord eighteen hundred eighty-seven, copy of which, being part of Exhibit C. hereto annexed, is made part hereof as though recited herein at length, reiterated a demand for said stock ; that said stock may be issued before any special meeting of the stockholders or corporators of said Portland & Ogdensburg Railway can be held to act in reference thereto ; that it would not avail your orators to ask the action of any meeting of said stockholders or corporators in reference to the premises, because the said city of Portland, for the reasons hereinbefore set out, could and would control the action of said stockholders, so as to give effect to the proceedings of said directors as aforesaid, and, in fact, the said city council, by virtue of said order approved on the third day of January in the year of our Lord

eighteen hundred eighty-seven, has already approved, ratified and insisted on the execution of said vote of said board of directors; so that your orators say, that they have used all efforts and exhausted all resources, which could be effectual with reference to the action of said Portland & Ogdensburg Railway or its directors in relation to the premises.    \*    \*    \*

That if said stock should issue in accordance with said vote of said directors, your orators and all other holders of said bonds and of the shares of the capital stock of said Portland & Ogdensburg Railway, for the reasons aforesaid, would have no adequate remedy in reference thereto, except to apply to your honors to cause the cancellation of said stock before the same might or could be disposed of by said city of Portland; that meanwhile, the issue of said stock would greatly depreciate the market value of the shares of your orators and other holders of shares in the capital stock of said Portland & Ogdensburg Railway, and prevent sales thereof at their just value; and that further your orators and other said holders of bonds and of shares, would be wholly remediless, if meanwhile said city of Portland should dispose of said shares to new and innocent holders thereof.

The case was heard on bill, pleadings and proofs. Only a portion of the arguments of counsel upon the issues of fact are given in this report.

The case is stated in the opinion.

*W. L. Putnam,* for plaintiffs.

To the question of jurisdiction counsel cited:  Eq. Rule 94, U. S. Sup. Court; *Perdicaris* v. *The Charlestown Gas-light Co.*, Chase's Decisions, p. 435; *Gerry* v. *Stinson*, 60 Maine, 186.

The statute does not provide merely that things may, at the option of the parties interested, be done in the way pointed out by it; but it directs the nature of the contract between the parties and makes it subject as an entirety to the approval of the voters of the city.  The contract is not between the city officials and the officials of the railroad company, but, with the assent of the corporation, between the legislature and the voters of the city; and even so far as concerns the voters, the legislature gave them no authority to alter any of the details to which this case

relates. Equity will not permit the city to set up these coupons as valid when the statute expressly directed its treasurer to cancel and surrender them. Story's Eq., 11th ed. § 64, g.

There is nothing in the contract of July 24, 1872, that shows the parties intended to vary from the statute. Past-due coupons were delivered to the city by mistake. City was not induced thereby to change its position, and hence no estoppel. *Starrett v. Rockland Co.*, 65 Maine, pp. 374, 380; *Merchants Bank v. State Bank*, 10 Wall. 604; *Pacific R. R. of Mo.* v. *Missouri Pacific Ry.*, 111 U. S. 505; Morawetz Priv. Corp. § 630, *et seq.*

We say, therefore, that by force of the statute of 1872, which overrides all the inadvertent and unauthorized acts and omissions of the treasurers of these two corporations, the city never had any right in any event to any overdue coupons; that by force of this statute, particularly in connection with the surrender of the coupons at the time of registration, the railroad coupons, corresponding to the amount of the city coupons paid by the railroad, are to be held to have been cancelled as provided in the closing paragraph of the fifth section of the act of 1872; and that, passing by all these, the parties, when they came to make an adjustment in the spring of 1881, went back to the principles of the act of 1872, the city at that time distinctly waiving all claim, if any it ever had, for any accrued interest in excess of interest paid by itself; and that at this time the parties, by their own voluntary act, established that the just and lawful claim of the city, both for interest and stock, is in accordance with the allegations of our bill, so that we should have the full relief asked for therein.

*J. W. Symonds and C. F. Libby*, for defendants.

The claim of the city is that the case stands, in all respects as to these railroad bonds, precisely the same as if the city were now in possession of the sixty coupons originally upon each one of the thirteen hundred and fifty $1000 bonds now held by the city, the coupons having been cut from them solely for the purpose of registry for greater security.

The city being the holder of $1,350,000, of the railroad mortgage bonds with sixty registered coupons upon each bond, and

the railroad company having wholly defaulted as early as March 1st, 1876, in the performance of the condition of its penal obligation which it had given to the city as aforesaid,—in February and March, 1881, proceedings were had by which the city claims that full and absolute title was given to it to all said railroad mortgage bonds, with all coupons upon them from the date of their original issue, November 1st, 1871.

There was a transfer to the city of the absolute title of all the railroad bonds, including coupons, which the city previously had held as collateral. The city was the holder of the registered coupons in law just as much as it was of the principal bonds. The intent manifest in the papers is to give the city full title to what it previously held only as collateral, and the city gave a full and, in fact, a largely excessive consideration for such transfer. Full title to the collateral security gave the city but a small percentage in value of the amount of the actual railroad debt and the city surrendered to the railroad company its penal obligation in the sum of $2,700,000, conditioned to hold the city harmless from the whole loan and from all expenditure pertaining to the same, and also gave up, as further consideration for its full title to the railroad bonds $950,000, in the stock of the railroad company.

There is nothing in conflict with the claim of the city in this respect in the fact that on April 9, 1881, after the city had acquired full title to the railroad bonds, the railroad delivered to the city the coupons which had been paid upon the municipal scrip. In any view of the matter they should have been delivered to the city, and the city treasurer was the proper depository for them. If the railroad company had ever paid its debt to the city, the amount of the coupons upon municipal scrip which it had paid would, of course, have been deducted from the amount due, but this affords no reason, why such payments should be deducted from the value of the collateral security, grossly inadequate at best to pay the railroad debt to the city.

It was discovered early in the history of these transactions that the railroad company was not going to be able to keep its obligation to the city and to hold the city harmless from the loan which it was making to the railroad, and it was precisely the thing

which the railroad ought to have done, to waive its right of cancellation or surrender of any part of the collateral security deposited with the city, when it was apparent that the railroad could not keep its principal obligation.

HASKELL, J. The Portland & Ogdensburg Railroad Company issued its mortgage bonds dated November 1, 1871, with interest coupons attached, payable semi-annually at the rate of six per cent per annum, until the bonds should fall due at the end of thirty years.

The mortgage securing these bonds became foreclosed December 15, 1885, and under chap. 507, of the private and special laws of that year, these bondholders formed themselves into a corporation under the style of "The Portland & Ogdensburg Railway," one of the defendants in this cause, and became shareholders therein according to the amounts due on the bonds held by each respectively.

The plaintiffs are holders of these bonds of the par value in the aggregate of $15,000; and the defendant city is the holder of the same of the par value of $1,350,000.

The defendant corporation, on the 21st of December, 1886, voted to issue 24,840 shares to the city of Portland, as its proper proportion of stock, computed from the aggregate of its bonds and interest thereon from the date of their issue, November 1, 1871, amounting to $2,484,000.

The plaintiffs deny that the city is entitled to so much interest upon its bonds as to give it the amount of stock voted to it by the defendant corporation, and therefore, in behalf of themselves and others of like interest, ask an injunction to restrain the threatened issue of stock to the city.

There was no over-issue of bonds under the mortgage, and, if the city be allowed the full number of shares voted to it, the plaintiffs' proportions in the mortgage debt would not be diminished beyond their respective aliquot parts thereof. Their rights flow from owning a fraction of the whole mortgage debt; and their equity to restrain the threatened issue of shares must arise, if at all, from an unlawful attempt by the defendant company to

give the city more shares than it is entitled to under any legal contract or arrangement between the city and railroad company.

It was competent for the city and old corporation to make any agreement that would give the city interest upon its collateral from the date of its issue ; and the question, therefore, is whether such an agreement was made; for, if it was, then the plaintiffs have no equity that calls for relief on that score, inasmuch as no attempt is made to increase the debt beyond the amount specified in the mortgage, of which the plaintiffs are entitled to their proportionate shares only.

Had the attempt been to increase the debt beyond the limit named in the mortgage, the plaintiffs would have been threatened with diminished proportional shares in the mortgaged property, and clearly would have an equity to prevent it; but as that is not the case, their equity must arise from a violation of contract between the defendants; and unless that be shown, they cannot maintain their bill.

By c. 165, of the private and special laws of 1872, the city of Portland was authorized to issue scrip to an amount not exceeding $2,500,000, to aid in the construction of the Portland & Ogdensburg railroad, upon the security ;

*First*, of a bond of the company "in a suitable penal sum," conditional to pay the interest and principal of the scrip as the same should fall due, and to save the city harmless on account thereof.

*Second*, of the mortgage bonds of the company, "issued and bearing date on the first day of November, 1871," equal to the amount of scrip issued and delivered under the act as collateral security for the penal bond.

*Third*, of paid up shares of the company, equal in amount to the city scrip received, from time to time, until the whole number of shares authorized by the charter of the company shall have been issued, to be held also as collateral security to the penal bond.

This act, also, provides that, "upon payment by the company of the interest which shall, from time to time, accrue upon said scrip, the city treasurer shall cancel and surrender to the company an amount of interest warrants attached to said mortgage

bonds, equal to and corresponding as nearly as may be in date, to the amount of interest so paid on said scrip," and that the shares of the company held as collateral, may be sold and transferred, with the consent of the directors of the company, whenever an exchange thereof can advantageously be made for any of the city scrip; and that the scrip so procured shall be cancelled, and that the amount thereof shall be indorsed on the respective bonds of the railroad company given on the issue and delivery of such scrip.

July 12, 1872, the bond of the company in the penal sum of $2,700,000 conditioned to save the city harmless as required by the act before referred to was delivered to the city; and upon the 24th of the same month the city, in exchange for its scrip of the par value of $50,000, received an equal amount of the mortgage bonds of the railroad company with interest coupons attached, payable semi-annually after November 1, 1871, the date of the bonds fixed by the act before named. One of these coupons upon each of the bonds received by the city upon this first exchange of bonds had been overdue since May 1, and to make the rights of the parties more clear, the city and railroad company entered into an agreement in writing on the same day that provided among other things; "said city may collect so many of the coupons of the mortgage bonds of said railroad company, overdue and as they may become due, and so much of the principal of said mortgage bonds when the principal comes due, as will indemnify the city for all existing defaults, with expenses and costs."

Under this agreement, exchanges of bonds were made, the city always taking railroad bonds with all the interest coupons upon them, with possibly a trifling exception, until the fall of 1873, when the city availed itself of a stipulation in the bonds allowing their registration, and to accomplish this, cut off all the coupons upon its railroad bonds and surrendered them in sheets of sixty coupons each to the railroad company, but retained the bonds as registered bonds.

The treasurer of the railroad company punched each coupon surrendered by the city, and did the same thing with all the coupons, as they were cut in sheets from bonds, when future exchanges

were made.    He kept a book upon which all the bonds delivered to the city were entered as registered bonds, indicating the exchange of railroad bonds with all coupons on, precisely as had been done before the bonds had been converted into registered bonds.

The registration did not change or vary the rights of the parties as they existed at the time; nor does it show any intention of new or different rights for the future.

The railroad company had a right to issue bonds bearing interest from November 1, 1871, and by doing so did not invade any rights of the plaintiffs.    The case indicates that both defendants understood that all the coupons, originally upon the railroad bonds, should be held by the city as collateral for its loan equally with the bonds themselves.    The company pledged over $900,000 of these bonds to parties, other than the city of Portland, without regard to overdue coupons upon them.    That was a custom of the company, and it strongly shows its intent concerning the city collateral.

The last exchange of bonds was in August, 1875; and the company for the last time paid interest upon the city scrip September 1, of that year.    Since then the city has paid on the same $81,000 yearly.

The mortgage of November 1, 1871, secured bonds of that date amounting to $3,300,000; $800,000 of these were reserved to take up a first mortgage of that amount, but have not been issued. $1,350,000 of them were issued to the city of Portland as collateral for its loan.    $108,000 were pledged as collateral for the "Dalton loan" of $51,041.88.    $805,000 were pledged to various parties for loans.    $213,000 were sold to contractors at par.    $19,500 were sold in payment for material and equipment, and $4,500 are unissued.

All of these bonds, except the $1,350,000 delivered to the city and the $232,500 sold, were pledged to secure corporation debts amounting to less than half their face value; and the $805,000, pledged in various places, were finally taken by the pledgees or sold at prices varying from twenty to sixty cents on the dollar.

Five years after the railroad company had defaulted in the pay-

ment of interest upon the city scrip, that during that time had been paid by the city at the rate of $81,000 yearly, the company, on February 19, 1881, voted a proposition "to transfer all mortgage bonds of the Portland & Ogdensburg Railroad Company now held as collateral, upon the surrender of the stock of the company also held by the city and the discharge of the bond of the company to the city, dated July 12, 1872," and on the same day, the city council passed an order accepting the proposition, and "authorizing the mayor, city treasurer and city solicitor to carry into effect, in behalf of the city, the terms of said proposition."

The order of the city council was approved by the mayor on February 21, 1881, and on the same day the city officers, authorized to do so, reported to the city council, "that they have received from said company a transfer to the city of the absolute title of all the mortgage bonds of said Portland & Ogdensburg Railroad Company formerly held as collateral, and have surrendered the stock of said company also held as security by the city, and have discharged the bond of said company to the city, dated July 12, 1872, in accordance with said order," and on the same day this report was accepted by the city council. By this settlement between the parties, the city took the absolute title to the mortgage bonds with all the coupons on them that had ever been delivered to it, and is entitled to convert them into shares of the new company so far as they remain outstanding and unpaid.

Coupons amounting to $630, had been cut from a few of the railroad bonds before they were delivered to the city, and, therefore, never became collateral to the city scrip. This amount must be deducted from the amount of shares voted the city.

Coupons of city scrip amounting to $127,260 were paid by the railroad company as they fell due and were delivered to the city treasurer. The payment of these coupons by the railroad company operated, under the act of the legislature authorizing the loan, as payment of an equal amount of coupons upon the railroad bonds held by the city ; for, by the terms of the act, the city treasurer was required to "cancel and surrender to the company interest warrants" attached to the railroad bonds, equal in amount to the interest coupons on city scrip paid by the company.

Equity holds that to have been done which ought to have been done; and, when coupons upon city scrip were paid by the company and surrendered into the city treasury, it became the duty of the city treasurer to cancel a like amount of coupons upon the railroad bonds in his custody. It was his duty to do it, and equity regards it as done.

The plaintiffs and the city are entitled to be shareholders in the new corporation in the exact proportion of their respective debts against the old railroad company; and, if either should insist upon receiving shares of stock greater in amount than its debt, the legal rights of the other would be invaded exactly so much; for the increase of one fraction correspondingly decreases the remainder of a whole.

The plaintiffs should not complain of any disposal made by the mortgagor of the bonds issued and sold to others, if there be no over-issue of bonds; but they have a right to hold their aliquot shares in the security, computed from the whole amount of bonds issued and outstanding. If none of the bonds issued had been paid, the plaintiffs could not murmur; but when part of them were paid, that liability was extinguished and the security became correspondingly increased.

Payment to the city cancelled so much of its debt; and it is impossible to revive the amount so paid by any arrangement between the city and the railroad company, its debtor, to the prejudice of the plaintiffs and of others of like merit.

*Bill sustained. Shares voted to the city of Portland reduced* $127,890. *Decree accordingly.*

PETERS, C. J., WALTON, DANFORTH and VIRGIN, JJ., concurred, and EMERY, J., concurred in the result.